UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAMADASA JIVATMA,

           Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

           Defendant.

CASE NO. 3:10-CV-05737-JRC

ORDER ON PLAINTIFF'S COMPLAINT

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. (<u>See</u> also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United States Magistrate Judge, ECF No. 12.) This matter has been fully briefed. (<u>See</u> ECF Nos. 13, 17, 18)

    Plaintiff seeks judicial review of the denial of benefits on her Social Security claims, which were based on the admittedly severe impairments of right upper extremity reflex sympathetic disorder, myofascial pain syndrome, and cervical degenerative disc disease. The

ORDER ON PLAINTIFF'S COMPLAINT - 1

medical evidence of record did not demonstrate conclusively that plaintiff was disabled and incapable of working. Therefore, plaintiff's claims rely on the credibility of her testimony.

It is not the role of this Court to determine the degree to which plaintiff's testimony is credible. The Administrative Law Judge ("the ALJ") who heard first-hand plaintiff's testimony at an administrative hearing, bears that responsibility. It is the responsibility of this Court to determine whether or not the ALJ followed the proper procedure when not crediting fully plaintiff's testimony and whether or not the reasons given by the ALJ are clear and convincing and supported by substantial evidence in the record.

After considering and reviewing the relevant record, the Court concludes that the ALJ here properly provided clear and convincing reasons to discount plaintiff's testimony. Therefore, the written decision by the ALJ denying plaintiff's claims is affirmed.

## BACKGROUND

Plaintiff, RAMADASA JIVATMA, was twenty-eight years old on her alleged date of disability onset of February 12, 2002 (Tr. 122). She has recorded earnings from 1993 through 2004 (Tr. 133). Plaintiff graduated from high school and has taken some college courses (Tr. 26-27).

On November 11, 1999, plaintiff was in a motor vehicle accident (Tr. 27). Plaintiff testified that she suffered some bleeding on her brain and slight brain damage (id.). Although she suffered no broken bones or fractures, she testified that her right hand was extremely swollen and purple (id.). Following her accident, she worked at West Telecommunications from 2000 to 2001, taking consumer orders for items advertised on television (Tr. 29). However, she testified that "it was like really painful to type, hard to concentrate" and that she was making mistakes reading the required script (id.).

In a similar fashion, she also worked at the retail store Big Lots from approximately June, 2001 through February, 2002, but she "was just in too much pain and kept lowering" her hours until her employer let her go (Tr. 28-29). Subsequently, plaintiff attended college courses and received a certificate for the medical transcription program she completed at Metro Community College in 2003 (Tr. 27, 30). In 2004, she was employed at Godfather's Pizza (Tr. 28). However, plaintiff testified that she worked there for two weeks only and that it "was just too much." (id.).

## PROCEDURAL HISTORY

Plaintiff filed for Social Security Disability and Supplemental Income benefits in 2005, however these claims were denied initially (see Tr. 155). Plaintiff did not appeal the denial (see id.), however she later requested that these applications be reopened (Tr. 23).

Plaintiff again applied for Social Security benefits on May 9, 2007 (Tr. 122-29). She alleged disability due to reflex sympathetic dystrophy ("RSD") and an inability to work due to extreme pain (Tr. 159). Plaintiff's claims were denied initially on July 2, 2007, and following reconsideration on September 6, 2007 (Tr. 60-76). Plaintiff requested a hearing on September 26, 2007 and her hearing was held on September 15, 2009 before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") (Tr. 19-59, 77-81). On November 25, 2009, the ALJ issued a written decision in which she found that plaintiff had not been under a disability as defined in the Social Security Act ("the Act") from February 12, 2002 through the date of the decision (Tr 7-18).

On September 19, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981. In October, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (ECF Nos. 1, 3). In her Opening Brief, plaintiff contends that the ALJ: (1) erred in not evaluating properly plaintiff's testimony and credibility;

(2) erred in failing to consider side-effects from plaintiff's medications; and, (3) erred in formulating plaintiff's residual functional capacity ("RFC") and presenting incomplete hypothetical questions to the vocational expert ("VE") (ECF No. 13, p. 10). Plaintiff also contends that this matter should be remanded for an award of benefits (id.).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act ("the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff was disabled under the Act only if plaintiff's impairments were of such severity that plaintiff was unable to do previous work, and could not, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also

Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

## DISCUSSION

1. The ALJ evaluated properly plaintiff's credibility and testimony.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). The ALJ may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, 885 F.2d at 603.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v.

Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). However, as stated by the Ninth Circuit Court of Appeals, "if the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (*citing* Morgan, 169 F.3d at 600).

The ALJ here found that plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms" (Tr. 14). Dr. Donna M. Smith, Psy.D. ("Dr. Smith ") observed during plaintiff's memory function evaluation that plaintiff "did

not always appear to put her best effort into the testing" (Tr. 295). Dr. Smith explained that plaintiff "seemed to hold back her responses to some degree" (id.). However, the ALJ did not make an explicit finding that plaintiff was malingering. "Principles of administrative law require the ALJ to rationally articulate the grounds for her decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). Therefore, the ALJ's credibility finding here must be supported by "clear and convincing" reasons. See Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

    a.  <u>The ALJ's observations regarding plaintiff's comfort level at her hearing and regarding plaintiff's tattoos do not provide support for the ALJ's credibility finding</u>.

The ALJ noted that plaintiff "sat comfortably for the duration of the proceedings" (Tr. 14). The ALJ also noted plaintiff's tattoos and found that plaintiff's "on-going complaints of severe right upper extremity pain, if accurate, would not allow her to withstand the pain of being tattooed, as she has alleged hypersensitivity to the point of wearing a glove to avoid tactile sensation" (Tr. 14). Defendant noted that the ALJ did not rely explicitly on her observations regarding plaintiff's comfort level during the proceedings when making her credibility finding, but defendant also implicitly conceded that the ALJ may have considered "some erroneous credibility factors" (ECF No. 17, p. 9).

As noted by the Ninth Circuit, the "sit and squirm" jurisprudence "has been condemned." Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The denial of Social Security benefits cannot be based on an ALJ's observations that a claimant sat comfortably at an

administrative hearing when the claimant's statements to the contrary are supported by substantial evidence. Id. (citation omitted). Here, the ALJ explicitly noted during the hearing that plaintiff had her "right arm on the table the whole time" (Tr. 50). The factor of plaintiff's comfort level at her hearing does not provide support for the ALJ's adverse credibility finding See Perminter, 765 F.2d at 872. Similarly, as plaintiff contends that she obtained her tattoo before her motor vehicle accident and as the ALJ failed to develop the record regarding this factor, plaintiff's tattoos do not provide support for the ALJ's adverse credibility finding.

      b. <u>The ALJ's findings regarding plaintiff's degree of pain and other reported symptoms are supported by substantial evidence in the record as a whole.</u>

The Court observes that it is clear from the record that plaintiff suffered from pain and that objective medical evidence supports this finding (See, e.g., Tr. 212 (observed hypersensitivity and temperature differences between hands), 233, 235, 237, 240, 242, 248, 252, 278, 283 (treatment notes of muscle spasm and tightness); but see Tr. 214 (MRI and LP results "certainly reassuring, in terms of underlying pathologic abnormality"), 298, 301). However, even given plaintiff's pain, she still has demonstrated an ability to tolerate her physical therapy treatments "well" (Tr. 283) and to engage in some activities of daily living (Tr. 33, 148; see also supra, section 1.c). Plaintiff also reported "feeling better" following physical therapy on many occasions (Tr. 208, 281, 285, 286), reported that she was "able to do more when" attending physical therapy, and specifically indicated that she then could "empty the dishwasher in 8-10 minutes without a rest" (Tr. 282). Plaintiff was discharged from physical therapy on February 23, 2006, with the established goals having "been substantially met" (Tr. 284). Therefore, the relevant question is what is the degree of pain suffered by plaintiff. Even if a claimant "has an

1  ailment reasonably expected to produce *some* pain; many medical conditions produce pain not
2  severe enough to preclude gainful employment." Fair, 885 F.2d at 603.

3  Here, the ALJ made a number of observations regarding potential conflicting evidence
4  regarding the degree of pain plaintiff suffered (Tr. 14-16). Plaintiff's testimony of requiring two
5  days to receive pain relief from her trigger point injections is contradicted by the largest volume
6  of evidence. At her hearing, plaintiff testified that she did not do anything for a couple of days
7  after her injections because "the muscles are relaxing and it's incredibly painful" (Tr. 40, 49).
8  Plaintiff testified that for a couple of days after her injections, she was "just in a lot of pain, just
9  waiting for it to all get through my muscles and to relax it all so that I can go on feeling normal"
10 (Tr. 49). However, at a clinic visit on June 2, 2009, the treatment notes indicate that plaintiff
11 received her injections and "stated that within 10 minutes after injection that the pain in all 5
12 trigger point areas was gone and that [she] was then going to go home and resume normal
13 activity" (Tr. 330). This statement to her doctor on June 2, 2009 is contradicted directly by
14 plaintiff's hearing testimony on September 15, 2009, just three and a half months later (Tr. 40,
15 49, 330). The Court notes that this quoted statement by plaintiff on June 2, 2009 was in line with
16 what she regularly reported to her doctors following this procedure, demonstrated as follows:

17 On July 25, 2006, plaintiff "noted pain relief within minutes," and was able to
18 demonstrate near immediate increased range of motion (Tr. 253); on August 17, 2006, plaintiff
19 was able to demonstrate an increased range of motion "within minutes" (Tr. 251); on September
20 13, 2006, treatment notes by her doctor indicate that within minutes plaintiff "was able to
21 demonstrate an increased range of motion and expressed to us that she had experienced profound
22 pain relief" (Tr. 249); on October 2, 2006, plaintiff was able to demonstrate an increased range
23 of motion "within minutes following the procedure" and "expressed to us that she had

experienced profound pain relief" (Tr. 245); on October 23, 2006, plaintiff within minutes was able to demonstrate an increased range of motion and "expressed to us that she had experienced profound pain relief" (Tr. 243); on January 4, 2007, the results of plaintiff's intercostals nerve blocks were considered "profound" and "pain relief as well as increased range of motion" were evident after injections (Tr. 238-39); on February 13, 2007, plaintiff "described significant pain relief within minutes following the procedure and was able to demonstrate an increased range of motion at these areas" (Tr. 416); on March 19, 2007, plaintiff reported that she was exercising more regularly and had felt some degree of improvement in her symptoms and "described significant pain relief and demonstrated an increased range of motion following the procedure" (Tr. 236); on April 23, 2007, plaintiff received intercostals nerve blocks and within minutes thanked the doctor "profusely for the pain relief she obtained from this procedure," and was able to demonstrate an increased range of motion after her trigger point injections (Tr. 233-34); on June 4, 2007, plaintiff received nerve blocks and "obtained almost immediate, profound and total relief of her headache," and also received trigger point injections resulting in increased range of motion and pain relief within minutes (Tr. 411-12); on January 17, 2008, plaintiff's "pain relief was evident within minutes" (Tr. 395).

That plaintiff experienced increased range of motion and pain relief within minutes or otherwise while still present at the clinic also was noted in the medical record for treatments occurring on February 22, 2008 (Tr. 390); April 16, 2008 (Tr. 386); May 29, 2008 (Tr. 381); July 22, 2008 (Tr. 376 (pain relief only noted)); September 26, 2008 (Tr. 367); October 28, 2008 ("near immediate pain relief" only noted); November 25, 2008 (Tr. 357); February 16, 2009 (Tr. 349 (pain relief only noted)); and, May 19, 2009 (Tr. 334 (pain relief "15 minutes after the injections" only noted)). Given the twenty or so notations in the medical record of plaintiff's

1  reported pain relief and increased range of motion "within minutes" of her treatments and her

2  subsequent testimony that it takes two days for her to experience pain relief, the ALJ's finding

3  that plaintiff was "not entirely credible as to the severity of her pain complaints" was a finding

4  based on substantial evidence in the record (Tr. 15; <u>see generally</u>, Tr. 15-16).

5        Regarding plaintiff's testimony about her symptoms, the ALJ also noted that plaintiff

6  testified that she vomited four days a week (Tr. 14, 33-34). Plaintiff testified that she had been

7  experiencing this regular vomiting for approximately ten years (Tr. 34). According to plaintiff,

8  her doctors "have no idea" as to why she had been experiencing such severe vomiting (<u>id.</u>). The

9  ALJ indicated that "the medical evidence of record indicates that her weight has remained stable

10 at around 200 pounds since 2005" (Tr. 14, 158; <u>see also</u> Tr. 277 (noting plaintiff was "positive

11 for weight gain" on August 11, 2005)). Therefore, the ALJ found that plaintiff's alleged

12 vomiting "had little if any effect upon her physically" (Tr. 14). The Court also notes the specific

13 notation within plaintiff's medical record on December 21, 2007 of "no fever, chills, nausea,

14 vomiting, bleeding or other concerns" (Tr. 316; <u>see also</u> Tr. 325). Plaintiff's testimony directly

15 contradicts the doctor's notations in her medical record (<u>see</u> Tr. 33-34, 316, 325). Although

16 plaintiff has not directed the Court to any evidence from plaintiff's medical record regarding

17 plaintiff's alleged vomiting problems, the strongest available evidence found within plaintiff's

18 medical record for this symptom is a notation on March 22, 2005 that plaintiff "has vomited on

19 occasion" (Tr. 213). There are many medical records from doctors examining plaintiff in which

20 this alleged difficulty with vomiting is not mentioned (<u>see</u>, <u>e.g.</u>, Tr. 216-31, 232-53). It is a

21 logical inference that if plaintiff was vomiting four times a week for ten years that her medical

22 record would indicate as such. <u>See</u> <u>Sample</u>, 694 F.2d at 642 (the ALJ may "draw inferences

23 logically flowing from the evidence").

24

The ALJ also noted that plaintiff testified that she loses consciousness as many as 20 days out of 30 due to pain (Tr. 14, 35-36). The ALJ found that there was "no evidence in the medical records to support such a claim" (Tr. 14). The Court notes that there are many notations of plaintiff visiting the doctor because she "needs more pain meds" and wants to refill her pain medications (see, e.g., Tr. 216). These medical reports on October 10, 2005; October 25, 2005; November 4, 2005; December 12, 2005; December 29, 2005; February 27, 2006; March 20, 2006; May 9, 2006; May 30, 2006; August 15, 2006; September 1, 2006; November 28, 2006; January 2, 2007; February 27, 2007; April 11, 2007; April 26, 2007; September 14, 2007; October 30, 2007; December 21, 2007; January 23, 2008; April 8, 2008; June 5, 2008; November 21, 2008; March 11, 2009; and May 15, 2009, all do not appear to indicate even once that plaintiff had suffered from a loss of consciousness (Tr. 216-31, 312-28). In addition, many of these medical records specifically indicate that plaintiff had "no fever, chills, nausea, vomiting, bleeding or other concerns" or something to that effect (Tr. 320-26). It is a logical inference that if plaintiff was losing consciousness five to twenty times a month, an alleged fact that plaintiff testified that her doctor thought was "strange," that this very extreme and strange symptom would be mentioned in her medical record at least once (Tr. 36). See Sample, 694 F.2d at 642 (the ALJ may "draw inferences logically flowing from the evidence").

The Court also notes that on October 23, 2006, Dr. Ryan J. Anderson, M.D. ("Dr. Anderson") encouraged plaintiff "to remain as active as possible and participate in a vigorous exercise program as well as physical therapy" (Tr. 242). As noted by the ALJ, plaintiff was instructed more than once to engage in "aggressive daily exercise" (Tr. 16, 275; see also Tr. 211, 217, 218, 223). The ALJ questioned plaintiff's motivation to heal due to her lack of activity and exercise (Tr. 16).

| | |
|---|---|
| 1 | Plaintiff also testified that the pain she experienced after her trigger point injections |
| 2 | became effective was 7 out of 10 (Tr. 40). However, as discussed above, see supra pp. 9-11, |
| 3 | plaintiff regularly reported significant or profound pain relief within minutes of receiving her |
| 4 | injections or that her pain was "gone" and on June 2, 2009, plaintiff reported after receiving her |
| 5 | injections that she was going to go home and resume normal activities (Tr. 330). The ALJ found |
| 6 | that these allegations of plaintiff regarding her level of pain were contradictory (Tr. 15). |
| 7 | For the reasons stated above and based on a review of the relevant record, the Court |
| 8 | concludes that the ALJ's finding that plaintiff's testimony at her hearing regarding the degree of |
| 9 | pain suffered was exaggerated is a finding supported by substantial evidence in the record as a |
| 10 | whole. |
| 11 | c. <u>The ALJ's findings regarding plaintiff's activities of daily living provide substantial |
| 12 | evidence for the ALJ's credibility determination</u>. |
| 13 | Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the |
| 14 | mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way |
| 15 | detract from her credibility as to her overall disability." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th |
| 16 | Cir. 2007 (*quoting* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit |
| 17 | specified "the two grounds for using daily activities to form the basis of an adverse credibility |
| 18 | determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether |
| 19 | or not the activities of daily living meet "the threshold for transferable work skills." <u>Orn</u>, 495 |
| 20 | F.3d at 639 (*citing* <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)). |
| 21 | Here, the ALJ discredited plaintiff's credibility in part because the ALJ concluded that |
| 22 | plaintiff's reported activities of daily living contradicted plaintiff's other testimony as to the |
| 23 | severity of her pain and other alleged symptoms (Tr. 14). The ALJ specifically indicated that |
| 24 | |

plaintiff's admitted activities of daily living included household chores such as cooking, sweeping and laundry, visiting friends at their homes, playing video games, watching movies, communicating by email and Facebook, playing cards, doing the dishes, reading and painting (id.). The ALJ also noted plaintiff's testimony that she cleans the houses of her friends about once a month in exchange for marijuana (id.). The ALJ found that these activities of plaintiff contradicted her hearing testimony that her average pain level on a good day was 8 out of 10 (Tr. 14, 37). According to the ALJ, it was "not credible that claimant would have the severe pain that she claims, and be able to clean house for her friends in exchange for marijuana" (Tr. 14).

The Court notes that plaintiff alleged that she conducted these activities slowly and with her left hand (Tr. 33, 41, 43-44, 47). The Court also notes that although plaintiff testified at her hearing that she suffered pain on an "average good day" of 8 out of 10 (Tr. 37) as the ALJ indicated (Tr. 14), plaintiff on a number of occasions within the disability period alleged a pain level much less severe, reporting pain as low as 3 out of 10 (Tr. 209 (01/05/2006 reported pain at best 3/10, at worst 5/10); Tr. 244 (10/02/2006 pain reported at 5/10); Tr. 242 (10/23/2006 pain reported at 3/10); Tr. 237 (01/04/2007 pain reported at baseline of 4/10)).

Although plaintiff's activities of daily living do not prove conclusively that plaintiff's reports of pain were exaggerated, the Court concludes that the ALJ's finding of a contradiction between plaintiff's reported activities of daily living and her reported level of pain is supported by substantial evidence in the record.

For the reasons discussed above and based on a review of the relevant record, the Court concludes that the ALJ's reasons for finding that plaintiff's testimony regarding the severity of her pain and other symptoms was exaggerated overall were clear and convincing and supported by substantial evidence in the record. See Smolen, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722.

    2. <u>Because the ALJ properly found plaintiff's allegations regarding the severity of her symptoms were exaggerated and because plaintiff's testimony is the only evidence suggesting functional limitations based on medication side-effects, the ALJ's failure to consider explicitly side-effects of pain medication was harmless error.</u>

Side-effects of medication taken for pain should be considered explicitly when assessing allegations of disabling symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929. However, the Ninth Circuit has concluded that where the only evidence for medication side-effects are provided by a claimant's subjective assertions and where the ALJ properly has discredited a claimant's testimony and credibility, the failure to consider explicitly side-effects of pain medication in this context is harmless error. See Thomas, 278 F.3d at 960.

Here, despite her burden to prove that she is disabled, plaintiff did not direct the Court to any objective evidence that her medications affected her functional capabilities, such as her concentration or memory abilities. See Meanel, 172 F.3d at 1113. The Court notes that Dr. Smith found that plaintiff's memory was "intact" (Tr. 296). Dr. Smith also specifically opined that plaintiff was "in the average range and cannot be considered impaired" regarding her memory function (Tr. 296, 287-96; see also Tr. 156 (no notations of concentration difficulties)). In addition, plaintiff's medical reports include many notations that plaintiff was tolerating her medications "well" and had no new complaints other than pain (Tr. 226, 228, 230, 312, 314, 316, 323, 325). There does not appear to be any indication from plaintiff's treating or examining physicians regarding any limitations on plaintiff's functioning due to side-effects of medication. In addition, the functional analysis conducted by the state disability determination services ("DDS") disability examiner, which was affirmed by Dr. Robert Hoskins, M.D. ("Dr. Hoskins")

(Tr. 270, 274), does not reflect any functional limitation on plaintiff as a result of side-effects from pain medication (see Tr. 254-61).

As a result, plaintiff's testimony provides the only evidence supporting functional limitations resulting from side-effects to plaintiff's medications. Although an absence of objective medical evidence to establish the severity of alleged symptoms cannot form the sole basis to reject side-effect testimony, here, the Court already has found that the ALJ properly discredited plaintiff's subjective testimony by using ordinary techniques of credibility evaluation, including conflicts between plaintiff's testimony at her hearing and her reports to her doctors. In addition, Dr. Smith opined that plaintiff potentially was malingering regarding her mental limitations (Tr. 295) and objective medical evidence in plaintiff's medical record supports a finding that plaintiff was not suffering any functional limitations due to her medications (see Tr. 156, 226, 228, 230, 254-61, 270, 274, 296, 312, 314, 316, 323, 325). Because the Court has concluded that the ALJ provided clear and convincing reasons supported by substantial evidence in the record to find that plaintiff's testimony was not credible in its entirety, because the only evidence supporting plaintiff's limitations due to side-effects of pain medication comes from plaintiff's subjective statements, and because affirmative evidence in the medical record suggests that she did not suffer negative medication side-effects that limited her functioning, the ALJ's failure to explicitly address the lack of limitations on plaintiff's residual functional capacity on the basis of medication side-effects here was harmless error. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

    3. <u>The residual functional capacity finding and the hypothetical presented to the vocational expert were proper</u>.

1        If the ALJ cannot determine whether or not a claimant is disabled based on a claimant's

2 current work activity or on medical factors alone and a claimant has a severe impairment, a

3 review is made of the claimant's residual functional capacity. See Social Security Ruling "SSR"

4 96-8p, 1996 SSR LEXIS 5 at *3-*4. A determination regarding "residual functional capacity 'is

5 an assessment of an individual's ability to do sustained work-related physical and mental

6 activities in a work setting on a regular and continuing basis.'" Brown v. Astrue, 405 Fed. Appx.

7 230; 2010 U.S. App. LEXIS 26760 (9th Cir. 2010) (per curiam) (unpublished opinion) (*quoting*

8 id.) (*citing* 20 C.F.R. § 416.945; Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998)). Residual

9 functional capacity is "the maximum degree to which the individual retains the capacity for

10 sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P,

11 App. 2 § 200.00(c).

12       The ALJ here found that plaintiff had the residual functional capacity ("RFC") to perform

13 light work except that she was limited to occasional postural limitations and limited to occasional

14 overhead reaching with the right upper extremity (Tr. 13). The ALJ also found that plaintiff

15 should avoid working around hazards, such as cold temperatures, and was limited to semiskilled

16 work (id.). Although the ALJ appears to have determined that plaintiff's RFC is more limited

17 than plaintiff's RFC as opined by the state DDS disability examiner (Tr. 254-61), whose opinion

18 was affirmed by Dr. Hoskins, M.D. (Tr. 370, 274), the ALJ gave the DDS opinion "significant

19 weight" (Tr. 13, 16).

20       Plaintiff contends that the ALJ's RFC and the hypothetical given to the vocational expert

21 ("VE") based on plaintiff's RFC were incomplete because they did not include limitations based

22 on the severity of pain plaintiff testified that she suffered and because they did not include

23 limitations based on side effects from plaintiff's trigger point injections (ECF No. 13, p. 18). The

24

Court already has found proper the ALJ's discounting of plaintiff's testimony regarding the severity of her pain and the discounting of the two days of rest that plaintiff alleged she needed to experience pain relief from her trigger point injections, see supra section 1.

Plaintiff also alleges that the ALJ's RFC and hypothetical provided to the VE were erroneous because the ALJ failed to account for handling or fingering limitations (ECF No. 13, p. 19). Although plaintiff bears the burden to prove disability, plaintiff has not directed the Court to a single medical opinion regarding any functional limitation on plaintiff's handling or fingering by any of her examining or treating physicians. In fact, plaintiff's record reflects numerous directions by plaintiff's treating physicians that she engage in "aggressive daily exercise" and physical therapy (Tr. 275; see also Tr. 211, 217, 218, 223, 242). In addition, the state DDS disability examiner specifically indicated that plaintiff did not suffer any functional manipulative limitations in reaching, handling, fingering or feeling (Tr. 257). This finding was affirmed by Dr. Hoskins (Tr. 270, 274).

Although plaintiff contends that Dr. John Holm, M.D. ("Dr. Holm") opined that plaintiff could not use her right arm at all (Reply, ECF No. 18, p. 9), the medical record cited actually reflects plaintiff's subjective complaint in the history of present illness ("HPI") section, a section containing plaintiff's subjective reports (Tr. 227). The Court already has found proper the ALJ's discounting of plaintiff's subjective testimony. In addition, Dr. Holm does not appear to have opined that plaintiff suffered any specific functional limitation. In fact, Dr. Holm indicated in this exact same medical record that plaintiff should continue her physical therapy (id. (see note 5 under plan: 'cont. with P.T.')). The prescription to continue physical therapy contradicts the idea that Dr. Holm had determined that plaintiff could not use her arm at all.

Similarly, plaintiff's reference to an observation by Dr. Anderson that plaintiff was choosing to carry her right arm tucked during one office visit on January 17, 2008 does not equate with an medical opinion regarding plaintiff's functional limitations (see Tr. 394). Although Dr. Anderson observed a limited range of motion in the right upper extremity on this occasion, he opined that such limited range of motion was due to her pain (Tr. 394). He also concluded during this treatment visit that plaintiff's "[p]ain relief was evident within minutes following the injections" (Tr. 395). The Court observes that just over one month later, on February 22, 2008, Dr. Anderson noted that plaintiff's pain reduction again was "evident" following her injections and also observed that plaintiff's "increased range of motion" also was evident following her injections (Tr. 390).

For the reasons indicated above and based on the relevant record, the Court concludes that the ALJ's RFC finding and the hypothetical presented to the VE, which was based on the RFC finding, are supported by substantial evidence in the record.

4. <u>The administration's decision not to reopen plaintiff's previous Social Security claims is not subject to judicial review</u>.

Plaintiff requests that the ALJ's failure to address plaintiff's request to reopen the prior, final benefits decisions be addressed if this case is remanded (ECF No. 13, p. 20). This Court is not remanding this case to the administration. In addition, according to the Ninth Circuit, a "decision not to reopen a prior, final benefits decision, [] is discretionary and not a final decision; therefore, it is not subject to judicial review." <u>Evans v. Chater</u>, 110 F.3d 1480, 1482 (9th Cir. 1997) (*citing* <u>Califano v. Sanders</u>, 430 U.S. 99, 107-09 (1977); <u>Davis v. Schweiker</u>, 665 F.2d 934, 935 (9th Cir. 1982)). Therefore, the Court will not address this issue here.

## CONCLUSION

The ALJ found that plaintiff's testimony regarding the severity of her pain and other symptoms was not credible entirely. This finding is supported by substantial evidence in the record as a whole. The ALJ's reasons for failing to credit fully plaintiff's credibility is supported by clear and convincing reasons. The ALJ's failure to consider plaintiff's alleged side-effects from pain medication is harmless, given the proper rejection by the ALJ, in part, of plaintiff's testimony. The Court also finds proper the ALJ's residual functional capacity analysis and hypothetical presented to the vocational expert. Therefore, the ALJ's decision is without harmful legal error and is based on substantial evidence in the record as a whole.

Based on these reasons and the relevant record, the Court **ORDERS** that the ALJ's decision in this matter is **AFFIRMED**.

**JUDGMENT** is for defendant and the case should be closed.

Dated this 23rd day of August, 2011.

J. Richard Creatura
United States Magistrate Judge